STATE of Missouri, Respondent,

v.

**Frederick S. YOLE, Appellant.**

**No. WD 62241.**

Missouri Court of Appeals, Western District.

June 15, 2004.

---

James R. Wyrsch and J. Justin Johnston, Kansas City, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Deborah Daniels and Charnette D. Douglass, Jefferson City, MO, for respondent.

Before ROBERT G. ULRICH, P.J., HAROLD L. LOWENSTEIN and EDWIN H. SMITH, JJ.

ROBERT G. ULRICH, P.J.

Frederick Yole appeals his convictions following jury trial for murder in the second degree, section 565.021, RSMo 2000, and armed criminal action, section 571.015, RSMo 2000, and consecutive sentences of twelve and three years imprisonment, respectively. Mr. Yole raises four points on appeal. He contends that the trial court (1) erred in sustaining the State's motion in limine to exclude his taped statement given on the morning of the incident, (2) plainly erred by allowing the expert testimony of William Newhouse regarding his and his wife's relative positions when Mrs. Yole was fatally shot, (3) plainly erred by failing to quash the entire venire panel when two venirepersons improperly raised the issue of the death penalty, and (4) erred in denying his motions for a new trial and for judgment of acquittal because the State failed to prove beyond a reasonable doubt that he was guilty of murder in the second degree. The judgment of convictions is affirmed.

## FACTS

On November 18, 2001, law enforcement officers were dispatched to the Yole's home in Lee's Summit in response to a shooting, a possible suicide attempt. Officers Stephen Doogs and Rachel Casady were among the first officers to arrive at the scene at approximately 1:30 a.m. The officers knocked on the front door, and Mr. Yole let the officers in. He was very distraught and had blood on his clothes. Mr. Yole immediately led the officers to the master bedroom where Mrs. Yole was lying on the floor in a fetal position in a large amount of blood. She had towels wrapped around her head. Officer Doogs asked Mr. Yole where the weapon was located, and Mr. Yole reached underneath a pillow on the bed and handed a handgun to the officer. The officers then instructed Mr. Yole to leave the bedroom. Officer Casady secured the handgun. Officer Doogs observed that Mrs. Yole had a gunshot wound to her head and right hand. He unsuccessfully checked her for a pulse.

In the meantime, Officer John Heil and Detective Roger Bowers separately asked Mr. Yole what had happened that night. Mr. Yole told Officer Heil that he and Mrs. Yole had gone out drinking. When they arrived back home, they got into a fight, and he left. When he returned home again, Mrs. Yole was gone. She arrived shortly thereafter and went to the master bedroom. He remained in the living room. Mr. Yole then heard a gunshot. At that

point in the conversation, Mr. Yole began crying, so Officer Heil ended the questioning.

Mr. Yole told Detective Bowers that he and Mrs. Yole had gone to a party that night with some friends. When they returned home they began fighting, and he left. When Mr. Yole returned home again, he found Mrs. Yole gone. She had left a message that she was going to kill herself. Mrs. Yole then arrived back home and went into the master bedroom. Remembering Mrs. Yole's threat to kill herself, Mr. Yole went into the master bedroom to find the handgun that he kept under the bed. He and Mrs. Yole then engaged in a physical altercation, and Mr. Yole hit Mrs. Yole. Mr. Yole told Detective Bowers that the fight got out of control and that he had the handgun. He stated that he thought the magazine (in which the bullets are located) was not in the gun and that he shot her. The detective then ended the interview.

An autopsy was subsequently performed on the decedent, and the cause of death was determined to be a gunshot wound to the head. Mr. Yole was charged by information in lieu of indictment with murder the first degree and armed criminal action. Following jury trial, Mr. Yole was convicted of the lesser-included offense of murder in the second degree and armed criminal action. He was sentenced to consecutive terms of twelve and three years imprisonment, respectively. This appeal by Mr. Yole followed.

## I. Admissibility of Taped Statement

■ In his first point on appeal, Mr. Yole claims that the trial court erred in sustaining the State's motion in limine to exclude his taped statement given at the police station after his arrest. Initially, the State contends that Mr. Yole failed to preserve this point for appellate review.

First, it argues that Mr. Yole failed to make an offer of proof at trial to preserve the error. A ruling on a motion in limine is interlocutory only and subject to change during the course of the trial. *State v. Purlee*, 839 S.W.2d 584, 592 (Mo. banc 1992); *State v. Albanese*, 9 S.W.3d 39, 51 (Mo.App. W.D.1999). Thus, the motion in limine itself preserves nothing for appeal. *Id.* Instead, the proponent of the evidence must attempt to present the excluded evidence at trial. *Purlee*, 839 S.W.2d at 592. If an objection to the proffered evidence is sustained, the proponent must then make an offer of proof in order to preserve the record for appeal and to allow the trial court to consider further the claim of admissibility. *Id.*; *State v. Hefflinger*, 101 S.W.3d 296, 299 (Mo.App. E.D.2003).

■ The State also contends that Mr. Yole's point relied on is insufficient. "A point relied on that refers only to a ruling on a motion in limine is technically deficient." *Hefflinger*, 101 S.W.3d at 299. If the deficiency in the brief does not, however, impede disposition on the merits, an appellate court may exercise its discretion to review it. *Id.*

In this case, although Mr. Yole did not technically make an offer of proof at trial, the record shows that the trial court viewed the videotaped statement during trial, giving it sufficient opportunity to reconsider its ruling on the motion in limine. Additionally, a transcript of that taped statement has been provided to this court to facilitate appellate review. Finally, the point relied on provides sufficient notice to this court and the parties of the specific issue on appeal. This court exercises its discretion to review the claimed error.

■ In his statement at the police station, Mr. Yole said the following, in pertinent part:

I want my son, I just, he needs to, to know that this wasn't intentional. He needs to be with his mother, she needs him at this point. Has anybody got a hold of him yet?

\* \* \* \* \*

It was an accident. It was not good, but it was an accident.

\* \* \* \* \*

I'd never hurt her intentionally. We were fighting, stupidly, and she threatened to kill herself and it really made me mad. 'Cuz we had a friend kill himself in our house. I didn't know it was loaded. I didn't. . . .

On appeal, Mr. Yole claims that the trial court's exclusion of this statement violated the rule of completeness. A trial court has broad discretion to admit or exclude evidence at trial. *State v. Williams*, 97 S.W.3d 462, 468 (Mo. banc 2003), *cert. denied*, 539 U.S. 944, 123 S.Ct. 2607, 156 L.Ed.2d 631 (2003). An appellate court will review such decision for abuse of discretion. *Id.* The rule of completeness ensures that a statement is not admitted out of context. *State v. Skillicorn*, 944 S.W.2d 877, 891 (Mo. banc 1997), *cert. denied*, 522 U.S. 999, 118 S.Ct. 568, 139 L.Ed.2d 407 (1997). When the State introduces part of a confession or admission into evidence, the defendant is authorized to introduce the remaining portion, although it may be self-serving. *Williams*, 97 S.W.3d at 468. "The rule is violated only when the admission of the statement in an edited form distorts the meaning of the statement or excludes information that is substantially exculpatory to the declarant." *Id.* (citing *Skillicorn*, 944 S.W.2d at 891).

Mr. Yole claims that his statement at the police station was admissible because the State introduced his statements at the scene to Officer Heil that he heard a gunshot from the bedroom and to Detective Bowers that he didn't think the magazine was in the handgun and that he shot his wife. Mr. Yole argues that the statement made later at the police station was a continuation of the original statements made to police at the scene and, thus, admissible under the rule of completeness.

■ The statements made at the scene and the statement made at the police station were, however, distinct and not part of one confession. *State v. Chambers*, 891 S.W.2d 93, 103 (Mo. banc 1994)(statement to police made 36 hours after a different statement to police was not part of one confession and not admissible under rule of completeness). Furthermore, even if all of the statements had been part of one whole confession, the exclusion of the statement made at the police station did not distort the meaning of the admitted statement. The statement made at the police station was merely redundant of Mr. Yole's statement to Detective Bowers at the scene that he didn't think the magazine was in the handgun when he shot Mrs. Yole. The trial court's exclusion of Mr. Yole's statement did not, therefore, violate the rule of completeness. Point one is denied.

## II. Plain Error Review

In his second and third points on appeal, Mr. Yole contends that the trial court committed plain error in two instances. First, he asserts that the trial court plainly erred by allowing William Newhouse, a firearm expert, to testify regarding the relative positions of Mr. and Mrs. Yole when Mrs. Yole was shot. Mr. Yole argues that Mr. Newhouse was not recognized by the court as having the requisite expertise to state his opinion of the relative positions of Mr. Yole and his wife when Mrs. Yole was shot.

The State contends that Mr. Yole waived even plain error review of this claim because defense counsel specifically stated, "No objection" to Mr. Newhouse's testimony. Where a party affirmatively states that he has no objection to the introduction of evidence at trial, plain error review is unavailable. *State v. Williams*, 118 S.W.3d 308, 313 (Mo.App. S.D.2003); *State v. Mead*, 105 S.W.3d 552, 556 (Mo.App. W.D.2003); *State v. Morrow*, 996 S.W.2d 679, 682 (Mo.App. W.D.1999), *abrogated on other grounds by State v. Withrow*, 8 S.W.3d 75 (Mo. banc 1999). "As opposed to a simple failure to object, which may warrant plain error review, a statement by defense counsel that there is no objection to a particular piece of evidence precludes a finding that the failure to object was negligent or inadvertent and renders that evidence admissible."[1] *Morrow*, 996 S.W.2d at 682 (quoting *State v. Stevens*, 949 S.W.2d 257, 258 (Mo.App. S.D.1997)).

To hold generally that a party does not waive plain error review on direct appeal when affirmatively assenting to the introduction of evidence or a proposed procedure places the trial court in a precarious position. Counsel appropriately resents judicial interference in their appropriate representation of a client during trial. Counsel makes many tactical decisions at trial, and the court is not privy to the mental process in determining the tactical approach employed by counsel. Thus, when counsel affirmatively represents to the court the waiver of any objection to the introduction of evidence, the court can assume that counsel's decision is reasoned and calculated and that counsel does not want the court to preclude introduction of the evidence or the proposed procedure.

In this case, the prosecuting attorney was inquiring of Mr. Newhouse about the relative positions of the shooter and Mrs. Yole when Mrs. Yole was shot. The following exchange occurred between the prosecutor and Mr. Newhouse:

Q: Did you reach an opinion to a reasonable degree of scientific certainty where this person would have had to be standing and where Shelley Yole would have been?

A: Yes, I did.

Q: Can you demonstrate for the jury the position the two people would have been in?

A: Sure.

PROSECUTOR: Your Honor, may the witness step down please?

THE COURT: Any objection?

DEFENSE COUNSEL: No objection.

Mr. Newhouse then demonstrated and explained to the jury the relative positions of Mr. Yole and Mrs. Yole during the shooting. The reasonable understanding of defense counsel's response to the court's question is that not only did he state that he did not object to the witness' descending from the witness chair for the purpose of demonstrating the respective positions of the shooter and the victim, his statement of "no objection" applied to the demonstration also. Therefore, by stating, through his attorney, that he had no objec-

---

1. A defendant may have a viable postconviction Rule 29.15 claim of ineffective assistance of counsel where counsel states "no objection" to evidence the introduction of which resulted in manifest injustice or a miscarriage of justice. *See Schnelle v. State* 103 S.W.3d 165 (Mo.App. W.D.2003) (Where defense counsel conceded to the striking of defen- dants' testimony at trial when defendant refused to answer prosecutor's question regarding collateral matters, and on appeal of denial of Rule 29.15 postconviction motion, court ruled defense attorney's failure to object to striking of defendant's entire testimony was ineffective assistance of counsel.)

tions to the admission of this testimony by Mr. Newhouse, Mr. Yole affirmatively waived appellate review of this issue, and the issue will not be reviewed for plain error. The second point is denied.

Next, Mr. Yole asserts in point three that the trial court plainly erred by failing to quash the entire venire panel when two venirepersons raised the issue of the death penalty as punishment should conviction result in this non-death penalty case.

 Rule 30.20 grants an appellate court authority to review, in its discretion, "plain errors affecting substantial rights ... when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." The plain error rule should be used sparingly and does not justify a review of every alleged trial court error that has not been properly preserved for appellate review. *State v. White*, 92 S.W.3d 183, 189 (Mo.App. W.D.2002). Plain error review involves a two-step process. *Id.* First, the reviewing court must determine whether the claim of plain error, on its face, establishes substantial grounds for believing that manifest injustice or miscarriage of justice has occurred. *State v. DeWeese*, 79 S.W.3d 456, 457 (Mo. App. W.D.2002). An error is plain if it is evident, obvious and clear. *Id.* If evident, obvious and clear error is found on the face of the claim, the appellate court may, in its discretion, then determine whether manifest injustice or a miscarriage of justice resulted therefrom. *Id.*

Mr. Yole argues that his right to have a fair-minded jury was violated when two venirepersons raised the issue of the death penalty during voir dire and the prosecutor was allowed to expound on the issue before the full panel. The exchanges of which Mr. Yole complains follow:

PROSECUTOR: The charges in this case are murder in the first degree and armed criminal action. Murder in the first degree is a Class A felony and as it's charged in this case, if you find the defendant guilty of murder in the first degree, you will have to recommend to the judge that the defendant be sentenced to life without the possibility of probation or parole. Knowing that, does that cause a problem for any person sitting on this jury on this case, that that is the potential penalty you would have to impose if you find him guilty of murder in the first degree? Does that cause difficulty for anybody.

VENIREPERSON KESSLER: I have a question. I thought felony one, a murder first degree charge carried a death penalty also possible?

PROSECUTOR: It is not possible in this case.

VENIREPERSON KESSLER: Do the lawyers bargain—

PROSECUTOR: No, sir, it's not possible in this case.

VENIREPERSON KESSLER: Thank you.

The prosecutor then asked the venire panel if it had any concerns that might affect the ability of any member of the panel to be fair and impartial, and the following exchange occurred:

VENIREPERSON PETERSON: I think—I am sure of I know Mr. Kessler, when he was talking about, as a woman, it might be tougher, I think death, that would be the judgment, should be the judgment not just imprisonment.

PROSECUTOR: And what I will tell you in order for the state to seek the death penalty there are certain factors that must be met. Those factors have not been met and the state's determination in this case and therefore we are not seeking the death penalty in this case. The felony we would be seeking is what the penalty is which would be life

without the possibility of parole, that is what you would have to impose if we convince you by proof beyond a reasonable doubt that the defendant is guilty of murder in the first degree. Does that help or cause a problem?

VENIREPERSON PETERSON: No. I mean, if that is the maximum that he can get, obviously that would be what you would have to decide if he was guilty or not.

■■■■ Generally, disqualification of an individual juror for bias or expression of an opinion is insufficient to challenge the entire panel. *State v. Evans*, 802 S.W.2d 507, 514 (Mo. banc 1991). To merit quashal, the defendant must demonstrate that the venireperson's questionable responses were so inflammatory and prejudicial that the right to a fair trial has been infringed. *Id.*

■■■■ The record does not, on its face, establish substantial grounds for believing that manifest injustice or miscarriage of justice has occurred. Evident, obvious and clear error does not exist, and plain error is not discerned regarding the trial court's declination to quash the venire panel. The two venirepersons who raised the question regarding the application of the death penalty did not serve on Mr. Yole's jury, and nothing in the record demonstrates their responses inflamed or prejudiced the jury. In fact, the jury acquitted Mr. Yole of murder in the first degree and convicted him of the lesser-included offense of murder in the second degree. Additionally, the jury did not assess the maximum punishment for the second-degree murder conviction. The jury was instructed to assess punishment for murder in the second degree at either life imprisonment or a term of imprisonment of not less than ten years and not in excess of thirty years. The jury assessed punishment in this case at twelve years imprison-

ment. Mr. Yole's request for plain error review of this matter is, therefore, declined. Point three is denied.

## III. Sufficiency of the Evidence

In his final point on appeal, Mr. Yole contends that the trial court erred in overruling his motions for judgment of acquittal at the close of the State's case, for judgment of acquittal at the close of all the evidence, and for a new trial. He claims that insufficient evidence was presented to support his conviction for second-degree murder. Specifically, he claims that the State failed to prove beyond a reasonable doubt that he intended to cause the death of Mrs. Yole.

Review of a challenge to the sufficiency of the evidence to support a criminal conviction is limited to determining whether sufficient evidence was presented from which a reasonable juror could find the defendant guilty beyond a reasonable doubt. *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998), *cert. denied*, 525 U.S. 1021, 119 S.Ct. 551, 142 L.Ed.2d 458 (1998). The evidence and all reasonable inferences drawn from the evidence are viewed in the light most favorable to the jury's verdict, and any contrary evidence and inferences are disregarded. *Id.* Great deference is given to the trier of fact. *Id.*

■■■■ A person commits the crime of murder in the second degree if he "knowingly causes the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person." § 565.021.1(1), RSMo 2000; *State v. Ellison*, 980 S.W.2d 97, 101 (Mo.App. W.D. 1998). Direct proof of a defendant's intent is rarely available; therefore, intent may be proven by inferences drawn from the surrounding circumstances. *Ellison*, 980 S.W.2d at 101.

 

Mr. Yole argues that insufficient evidence was presented to support his conviction of second-degree murder because no direct evidence was presented that he "knew that the gun contained bullets" and the circumstantial evidence of this fact was scarce. Evidence presented at trial showed that police recovered the handgun used to shoot Mrs. Yole at the scene. A magazine containing nine rounds was inside the handgun. Police also found a second magazine on the bed in the master bedroom. Mr. Yole's defense at trial was that he believed the handgun was not loaded because he saw a magazine on the bed.

Mr. Yole never contested at trial that he shot Mrs. Yole in the back of the head or that the handgun was a deadly weapon. "Intent to kill or inflict serious bodily injury can be inferred from the use of a deadly weapon on some vital area of the victim's body." *State v. Goodwin,* 43 S.W.3d 805, 816 (Mo. banc 2001), *cert. denied,* 534 U.S. 903, 122 S.Ct. 234, 151 L.Ed.2d 168 (2001). Both Mrs. Yole's son and her sister testified that Mr. Yole always kept a loaded magazine in the handgun. Two police officers testified that if the handgun did not contain a magazine it would weigh noticeably less than one that did contain a full magazine. They also testified that an unloaded handgun would also be noticeably unbalanced from the front to the grip. Finally, when police arrived, Mr. Yole first told Officer Heil that after Mrs. Yole arrived home and went into the bedroom he heard a gunshot. Later, when admitting that he shot Mrs. Yole, he told Detective Bowers that he thought the magazine was not in the weapon. This was sufficient evidence from which a reasonable juror could find beyond a reasonable doubt that when Mr. Yole pulled the trigger, he did so with intent to kill. The trial court, therefore, did not err in overruling Mr. Yole's motions for judgment of acquittal and for a new trial. The final point is denied.

The judgment of convictions is affirmed.

LOWENSTEIN, J. and SMITH, J., concur.