**STATE of Missouri, Respondent,**

v.

**Joseph MacDaniel PETERS, Appellant.**

**No. WD 64881.**

Missouri Court of Appeals,
Western District.

Jan. 17, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 28, 2006.

As Modified Feb. 28, 2006.

Application for Transfer Denied
April 11, 2006.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan J. Buchheim and Victor J. Melenbrink, Asst. Attys Gen., Jefferson City, for Respondent.

J. Armin Rust, Richmond, MO, for Appellant.

Before SPINDEN, P.J., and HOWARD and HOLLIGER, JJ.

VICTOR C. HOWARD, Judge.

Joseph M. Peters ("Peters") appeals from a conviction following a bench trial in the Circuit Court of Lafayette County for two counts of statutory sodomy in the first degree in violation of section 566.062.2.[1] Peters argues two points on appeal. In Point I, Peters argues that the trial court erred by finding him guilty and entering the judgment of conviction, because the evidence was insufficient to sustain a conviction, in that: (1) the evidence was in conflict with physical facts, surrounding circumstances, and common experience and was inconsistent so as to require corroboration; and (2) there was no evidence that corroborated the allegations of deviate

---

1. Statutory references are to the Revised Statutes of Missouri, 2000.

sexual intercourse with the alleged victim. In Point II, Peters argues that the trial court erred in sustaining the State's objection to evidence that he was incapable of sexual intercourse, because that evidence tended to show that the offense was impossible, in that there was evidence that Peters was impotent and Peters' trial counsel was dissuaded from presenting that evidence by the trial court's ruling. For the following reasons, the judgment of the trial court is affirmed.

## Background

Peters was charged by substitute indictment with three counts of statutory sodomy in the first degree, in violation of section 566.062.2. Count I charged that Peters had deviate sexual intercourse with his daughter K.P., who was then less than twelve years old, between April 8, 2002, and March 18, 2003. Count II charged that Peters had deviate sexual intercourse with his stepson D.A., who was then less than twelve years old, between December 1, 2001, and May 31, 2002. Count III charged that Peters had deviate sexual intercourse with D.A., who was then less than twelve years old, between May 1, 2002, and December 31, 2002.

Peters waived his right to a jury trial, and a bench trial was conducted on October 14, 2004. Medical examinations performed on K.P. and D.A. that did not reveal any evidence of sexual abuse were introduced into evidence by the State.

The State called D.A. as a witness, and he testified to the following: While Peters was living in Waverly, Peters showed D.A. nude pictures from adult magazines. While D.A. was taking a bath in the Waverly home, Peters asked D.A. if he "felt like looking at him," to which D.A. replied, "no." Peters also asked D.A. if he "wanted him to show me," to which D.A. "said no." Peters then performed oral sex on

D.A. in the bathtub. After D.A. got out of the bathtub and dried off, Peters had both oral and anal sex with D.A. on the bathroom floor. D.A. did not tell his mother (Peters' ex-wife) about these incidents, because he "felt scared that something would happen if [he] did." Later, while Peters was living in Lexington, Peters showed adult movies and magazines to D.A. Peters also instructed D.A. to take off his clothes in the living room of the Lexington home and proceeded to have anal sex with D.A. at that time. D.A. initially did not tell his mother about having anal sex with Peters in Lexington because he "was still scared that something would happen," and Peters told D.A. not to tell anybody. D.A. thought Peters would hurt him if he told somebody. D.A. eventually decided to tell his mother because he heard that K.P. (D.A.'s half sister) told their mother that Peters had also sexually abused her.

The State called K.P. as a witness, and she testified that Peters touched her privates while she was in Peters' bed. K.P. was unable to testify any further about being sexually abused by Peters because she was scared that Peters would hurt her. After K.P.'s testimony, the State also introduced videotaped statements of K.P. and D.A., in which both children testified that Peters sexually abused them, and then the State rested. At the close of the State's evidence, Peters moved for a judgment of acquittal on all three counts, which the court denied.

Peters called Angie Kelsall as a witness. Kelsall testified that Peters was her ex-boyfriend and the father of her son. Kelsall also testified that she began dating Peters shortly before his divorce from D.A. and K.P.'s mother and that she lived with Peters from approximately February 2001, until January 2002. Peters' attorney asked Kelsall to describe her sexual contact with Peters. The State objected on

relevancy grounds. The trial court sustained the objection, but Peters' attorney did not make an offer of proof at that time. Kelsall later testified on redirect examination that Peters was on medication that made it difficult for him to become aroused. Kelsall also testified on redirect examination that Peters had difficulty staying aroused and that she and Peters had sexual intercourse "[m]aybe once, twice a week, maybe not even that."

Peters testified on his own behalf that he never had any vaginal sex with K.P. and never had any oral or anal sex with K.P. or D.A. Peters also testified that he had been taking anti-depressants for five to seven years and that the anti-depressants made it difficult for him to become and stay aroused. Peters also testified on cross-examination that he was not taking anti-depressants at the time that Kelsall became pregnant with his child.

At the close of all evidence, Peters renewed his motion for a judgment of acquittal on all three counts, which the court took under advisement. Following the closing arguments, the trial court found Peters not guilty on Count I, because K.P. was unable to testify. On Counts II and III, the trial court found Peters guilty beyond a reasonable doubt of statutory sodomy in the first degree. Peters was subsequently sentenced to two consecutive twenty-five-year terms of incarceration. This appeal follows.

## Point I

█ In Point I, Peters argues that the trial court erred by finding him guilty and entering the judgment of conviction, because the evidence was insufficient to sustain a conviction, in that: (1) the evidence was in conflict with physical facts, surrounding circumstances, and common experience and was inconsistent so as to require corroboration; and (2) there was no evidence that corroborated the allegations of deviate sexual intercourse with D.A.

The standard of review for sufficiency of the evidence in a criminal bench trial is set forth in *State v. Niederstadt*, 66 S.W.3d 12, 13–14 (Mo.banc 2002), which provides:

In reviewing the sufficiency of the evidence in a court-tried criminal case, the same standard is applied as in a jury tried case. The appellate court's role is limited to a determination of whether the state presented sufficient evidence from which a trier of fact could have reasonably found the defendant guilty. The Court examines the evidence and inferences in the light most favorable to the verdict, ignoring all contrary evidence and inferences.

(Citations omitted.)

In support of Point I, Peters argues that because this is a sexual abuse case with only one witness, corroboration is required because D.A.'s testimony had inconsistencies and was unconvincing. Peters claims that where the surrounding circumstances alone do not make sense, the appellate court must look for corroboration. Peters argues that the circumstances in the instant case make a compelling case for requiring corroboration. Peters cites the following circumstances in support of requiring corroboration: (1) D.A. could not remember his age when Peters sexually abused him; (2) K.P. is the biological child of Peters, and she alleged at the age of four that Peters was molesting her; (3) D.A. alleged that Peters had sexually abused him at the same time K.P. alleged that Peters had sexually abused her, and three weeks before the trial, D.A. made allegations that were similar to K.P.'s allegations; (4) D.A. waited for thirteen months to tell his mother that Peters sexually abused him, and it was only in con-

junction with telling his mother that Peters smoked marijuana with him.

Peters also argues that D.A.'s account of the alleged sodomy contradicts common experience and was physically impossible. Peters claims the alleged sodomy was physically impossible for the following reasons: (1) D.A. testified that he was lying on his back with his legs raised when Peters had anal sex with him, and anal intercourse between two males is impossible in this position;[2] (2) D.A.'s testimony that Peters performed oral sex on him while he was in the bathtub presumes that Peters would have consumed soap that was on D.A.'s penis; (3) D.A.'s testimony required the trier of fact to believe that D.A. allowed Peters' penis to be inserted in his mouth immediately after being inserted in his rectum, and due to the highly unsanitary nature of this alleged sodomy, D.A.'s testimony is preposterous and violates common sense.

Peters also claims that D.A. contradicted himself because in the videotaped statement, D.A. testified that Peters was on his back and D.A. was on his knees, but at trial, D.A. testified that D.A. was on his back with his knees up. Peters also points out that the medical examination showed no evidence of sodomy and that if the rectal sodomy had actually occurred, the medical examination would have revealed stretching or tearing of the sphincter. Peters further claims that there were only two instances of sodomy according to D.A.'s testimony in court, but in the videotaped statement, D.A. alleged several other instances of sodomy. Peters also argues that there are internal consistencies in D.A.'s trial testimony about the order in which the alleged acts of sodomy occurred. Finally, Peters argues that D.A.'s testimony is implausible because D.A. did not testify that he suffered any pain from having anal sex with Peters.

"Generally, in sexual offense cases the victim's testimony alone is sufficient to sustain a conviction, even if uncorroborated." *State v. Sprinkle,* 122 S.W.3d 652, 666 (Mo.App. W.D.2003). The exception is that corroboration is required "when the victim's testimony is so contradictory and in conflict with physical facts, surrounding circumstances, and common experiences that its validity is doubtful." *Id.* The corroboration requirement "is triggered only by contradictions in the victim's trial testimony, and not by inconsistencies with his out-of-court statements or the testimony of other witnesses." *State v. Graham,* 906 S.W.2d 771, 778 (Mo.App. W.D. 1995). "The discrepancies must amount to 'gross inconsistencies and contradictions' and must relate directly to an essential element of the case." *State v. Gatewood,* 965 S.W.2d 852, 856 (Mo.App. W.D.1998) (quoting *State v. Marlow,* 888 S.W.2d 417, 422 (Mo.App. W.D.1994)).

In the instant case, there were no contradictions in D.A.'s trial testimony about the essential elements of first-degree statutory sodomy. D.A. testified clearly and unambiguously during the trial that Peters had oral and anal sex with him. Although Peters argues that D.A.'s testimony had inconsistencies and was unconvincing, none of the alleged inconsistencies relate to D.A.'s trial testimony. Therefore, corroboration was not required in order for the trial court to convict Peters of first-degree statutory sodomy.

Peters cites *State v. Kuzma,* 751 S.W.2d 54 (Mo.App. W.D.1987), which reversed a conviction for sodomy and first-degree sexual abuse due to a lack of corroboration. The instant case is distinguishable from

---

**2.** Peters claims that an appellate court can take judicial notice of this physical impossibil-

ity, but cites no legal authority for this proposition in his brief.

*Kuzma.* During cross-examination in *Kuzma,* one alleged victim (the defendant's stepdaughter) "admitted that she once told her mother and her grandmother that her natural father had molested her, not the defendant." *Id.* at 55. This alleged victim also acknowledged during cross-examination that she forgot what parts of her body the defendant had allegedly touched. *Id.* at 55–56. Another alleged victim in *Kuzma* testified on direct examination that the defendant had anally sodomized him, but he changed his story during cross-examination and redirect examination. *Id.* at 56. In the instant case, all of the inconsistencies alleged by Peters relate to collateral matters, and there was never any inconsistency in D.A.'s trial testimony or videotaped statement about Peters' identity or whether Peters had deviate sexual intercourse with D.A.

Peters cites several other sexual abuse cases where a conviction was reversed for a lack of corroboration.[3] All of these cases cited by Peters take a broader view regarding the exception to the general rule not requiring corroboration than this court

has most recently followed. The broader exception edges appellate courts into a fact-finding role by providing that "when the evidence of [the alleged victim] is of a contradictory nature, or when applied to the admitted facts in the case [his or] her testimony is not convincing but leaves the mind of the court clouded with doubts, [he or] she must be corroborated, or the judgment cannot be sustained." *State v. Tevis,* 234 Mo. 276, 136 S.W. 339, 341 (1911). The appellate courts, in these decisions, made independent assessments of the victim's testimony to determine credibility. Although the broader exception to the rule not requiring corroboration in *Tevis* has never been expressly overruled, this court has most recently followed the narrower exception.

This highlights the inconsistent and sometimes confusing evidentiary and appellate review rules that have evolved in sex offense cases and begs the question of why the standards used in every other case would not be sufficient and preferable.[4] Regardless, we have no authority to

---

**3.** *State v. Tevis,* 234 Mo. 276, 136 S.W. 339 (1911); *State v. Donnington,* 246 Mo. 343, 151 S.W. 975 (1912); *State v. Guye,* 299 Mo. 348, 252 S.W. 955 (1923); *State v. Burton,* 355 Mo. 467, 196 S.W.2d 621 (1946); *State v. Bursley,* 548 S.W.2d 586, 589 (Mo.App.1976).

**4.** Treating the statements of sex crime victims with a different standard hails from antiquity. The genesis of the corroboration rule seems to be from early forcible rape cases grounded in "[t]he admonition of Lord Hale that it must be remembered that this is an accusation easily to be made and hard to be proved, and harder to be defended by the party accused, though never so innocent." *State v. Goodale,* 210 Mo. 275, 109 S.W. 9, 11 (1908) (internal quotation omitted). In forcible rape cases, it was expected that "outraged innocence would compel the woman to denounce the ravisher at the first opportunity." *State v. Wade,* 306 Mo. 457, 268 S.W. 52, 54 (1924). "An outcry and resistance are important elements of evidence, and a want of these circumstances,

where they may be reasonably expected, goes far to disprove the charge of rape, and a concealment of the injury where there is an opportunity for early disclosure may lead to a like inference." *Goodale,* 109 S.W. at 12. In these early cases, where there was conflicting evidence, the victim's testimony stood "unsupported by others," and she did not express appropriate outrage and promptly report the attack, her testimony risked being considered, "an unnatural and unreasonable story, wholly unsupported, as it is, by any fact or circumstance corroborating it." *Id.* at 13 (internal quotation omitted).

Applying this separate corroboration rule to sex offenses involving minors has no logical or clear historical basis. Early decisions placed a high premium on corroboration in sex offense cases. Generally, however, the corroboration rule was not applied in cases involving minors, but only in cases where an adult alleged a forcible assault. *State v. Thomas,* 351 Mo. 804, 174 S.W.2d 337, 345 (1943), provides:

plow up a field previously planted with decisions of a higher court.

*State v. Nelson,* 818 S.W.2d 285, 288–89 (Mo.App. E.D.1991), also noted that there are two exceptions to the rule not requiring corroboration in sexual abuse cases and ultimately chose to follow the narrower exception. *Nelson* cited *State v. Barnes,* 325 Mo. 545, 29 S.W.2d 156, 158 (1930), which criticized the broader exception used in the cases cited by Peters. *Barnes,* 29 S.W.2d at 158, provides:

> An appellate court should not usurp the proper functions of the trial court and jury and set the conviction aside merely because it may disagree with the jury as to the truthfulness of the story told by the [alleged victim], or think the trial court should have set the verdict aside as against the weight of the evidence.

We agree with *Barnes* and *Nelson* and elect to follow the narrower exception to the rule not requiring corroboration in sexual abuse cases. By following the broader exception, this court would be acting as a trier of fact by assessing the credibility of D.A.'s testimony. Because D.A.'s trial testimony had no contradictions that related directly to an essential element of statutory sodomy in the first degree, corroboration was not required in this case.

Point I is denied.

> It is true a prima facie case of rape or attempted rape can be made on the uncorroborated testimony of the prosecutrix. Most of the decisions so holding were for rape of a female under the designated statutory age (now 16 years). That question is not in this case. At least it can be said where the prosecutrix is a mature woman and the case is weak there should be corroboration.
>
> At some point, courts began to apply this corroboration rule to all sex offense cases, regardless of the age of the victim. Certainly, corroboration can be important in any case, notably those involving only two witnesses: the victim and the accused. In cases where the dispute is not about the act but instead

## Point II

■ In Point II, Peters argues that the trial court erred in sustaining the State's objection to evidence that he was incapable of sexual intercourse, because that evidence tended to show that the offense was impossible, in that there was evidence that Peters was impotent and Peters' trial counsel was dissuaded from presenting that evidence by the trial court's ruling.

In support of Point II, Peters argues that he was deprived of presenting his evidence that the acts complained of were impossible for him to perform because of his sexual dysfunction. Peters claims that as a defendant, he was entitled to present his theory of defense and all evidence relevant to that theory. Peters argues that by sustaining the State's objection to evidence that he was incapable of sexual intercourse, he was denied a meaningful opportunity to submit all of the relevant and material facts bearing on his impossibility defense. Peters claims that when the trial judge asked Peters' defense counsel how much longer he intended to spend on the topic of Peters' alleged impotence, Peters' defense counsel was dissuaded in his attempt to present evidence so the court received an abbreviated and truncated de-

> whether the act was consensual, the desire for corroboration is especially instinctive. But we see no reason for a "corroboration rule" as such. The guideposts used in other cases regarding the sufficiency of evidence would seem to be sufficient. Inconsistencies affecting credibility are for the trier of fact to resolve. The real question is whether, despite any inconsistencies, there is substantial evidence with probative force sufficient to establish facts from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. Of course, if a witness's testimony is rendered doubtful in a sexual offense case as in any type of case, something more will be needed to support a conviction.

fense as a result. Peters concludes that he was denied a fair trial because he was deprived of the opportunity to vigorously pursue the defense of impossibility.

▉▉ "If an objection to the proffered evidence is sustained, the proponent must then make an offer of proof in order to preserve the record for appeal and to allow the trial court to consider further the claim of admissibility." *State v. Yole,* 136 S.W.3d 175, 178 (Mo.App. W.D.2004). An offer of proof must show three things: "(1) what the evidence will be; (2) the purpose and object of the evidence; and (3) each fact essential to establishing the admissibility of the evidence." *State v. Hirt,* 16 S.W.3d 628, 633 (Mo.App. W.D.2000). *State v. Bouser,* 17 S.W.3d 130, 141 (Mo. App. W.D.1999) (quoting *Evans v. Wal–Mart Stores, Inc.,* 976 S.W.2d 582, 584 (Mo.App. E.D.1998)), provides:

> An offer of proof at trial serves two purposes: (1) it "preserve[s] the record for appeal so the appellate court understands the scope and effect of the questions and proposed answers in considering whether the trial judge's ruling was proper," and (2) it allows "the trial judge to further consider the claim of admissibility" after having ruled the evidence inadmissible in pretrial hearings.

▉▉ An appellate court normally does not review evidence excluded by the trial court "unless a specific and definite offer of proof" was made at trial. *Hirt,* 16 S.W.3d at 633. The exception to the rule requiring an offer of proof is "very narrow" and involves a three-part test. *Destin v. Sears Roebuck & Co.,* 803 S.W.2d 113, 116 (Mo.App. W.D.1990). "First, there must be a complete understanding based on the record of what the excluded testimony would have been. Second, the objection must be to a category of evidence rather than to specific testimony. Third,

the record must reveal that the evidence would have helped its proponent." *Id.*

In the instant case, no offer of proof was made during the direct examination of Kelsall when the State objected to Peters' question to Kelsall about her sexual contact with Peters. The exception to the rule requiring an offer of proof does not apply in this case. Although the State's objection was sustained during the direct examination of Kelsall, the trial court allowed Peters' counsel to question Kelsall about her sexual contact with Peters during redirect examination after determining that the State had injected the issue during its cross-examination of Kelsall. Kelsall testified on redirect examination that Peters took medication that made it difficult for him to become aroused, but she also testified that she and Peters had sexual intercourse once or twice a week. Furthermore, Peters testified on direct examination that he took medications that caused him to be impotent and made it difficult for him to become and stay aroused. There is not a complete understanding of what Kelsall's testimony would have been, because Kelsall testified on redirect examination that she and Peters had sexual intercourse once or twice a week, so it is not certain that Kelsall would have testified on direct examination that Peters was impotent. In addition, the record does not reveal that the evidence would have helped Peters' impossibility defense, because evidence of Peters' sexual dysfunction was still introduced during Kelsall's redirect examination and Peters' direct examination. The court could still consider evidence of Peters' sexual dysfunction despite sustaining the State's objection during the direct examination of Kelsall. Because Peters made no offer of proof regarding the evidence he claims the trial court erroneously excluded, we will not review this claim.

Point II is denied.

## Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

SPINDEN, P.J., and HOLLIGER, J., concur.