STATE of Missouri, Respondent,

v.

Aundra G. WOODS, Appellant.

No. WD 72561.

Missouri Court of Appeals,
Western District.

Jan. 24, 2012.

Byron Woehlecke, Daniel Ross, Kansas City, MO, for Appellant.

Evan Buchheim, Jefferson City, MO, for Respondent.

Before ALOK AHUJA, P.J., THOMAS H. NEWTON, and JAMES EDWARD WELSH, JJ.

JAMES EDWARD WELSH, Judge.

Aundra G. Woods appeals from the circuit court's judgment convicting him of forcible sodomy and assault in the second degree. Woods contends that the circuit court erred in finding that he had violated Supreme Court Rule 25.05(A) by not turning over notes made by his investigator and by sanctioning him by excluding the investigator from testifying and by excluding cross-examination of witnesses regarding contact with the investigator. He also contends that the circuit court plainly erred by admitting evidence relating to the Rapid Strain Identification (RSID) test for saliva. Lastly, Woods asserts that the cir-

cuit court plainly erred in entering its written sentence and judgment that did not conform to the oral pronouncement of the sentence or the jury verdict. We affirm in part and remand in part.

Viewing the evidence in the light most favorable to the verdict, the evidence established that on February 22, 2009, G.C. went to the Woods's house located at 4620 Kensington in Jackson County, Missouri. Woods and G.C. were friends who smoked crack together. G.C. arrived around 6:00 p.m. and proceeded to watch television with Woods while he drank. They were both seated on Woods's bed when Woods jumped up and stabbed G.C. in the hip with a knife. Woods then attempted to stab G.C. in the chest, but she was able to grab the knife out of his hand and throw it across the room, cutting her hand in the process.

Woods then produced another knife and told G.C. that, since he had already stabbed her, he might as well finish her off. G.C. attempted to calm him down and told him that she would not tell anybody. Woods then assisted G.C. in bandaging her stab wound with duct tape and helped her to use the restroom. While G.C. was using the restroom, Woods stood by the door, with the knife, and told her she was not going anywhere.

After using the restroom, Woods and G.C. returned to the bedroom where Woods told G.C. to remove her clothes. Woods then held a knife to G.C.'s throat and told her to perform oral sex on him, which she did under duress. Woods then tried to push his penis into G.C.'s vagina but was unable to maintain an erection. Woods then proceeded to perform oral sex on G.C.

After several hours, G.C. requested that she be fed, and she went to the kitchen to put a "muffin biscuit" in the microwave. At this point, she escaped through the back door and knocked on several of the neighbors' doors seeking help. The Kansas City Missouri Police responded to a call and located G.C., partially clothed, in the middle of the street at approximately 3:30 a.m. on February 23, 2009.

G.C. was taken by ambulance to St. Luke's Hospital where she required 7 or 8 staples to close her stab wound and several stitches to treat the cut on her finger. She also had a SANE (Sexual Assault Nurse Examiner) exam performed, and the results did not show any evidence of Woods's DNA or pubic hairs.

Woods was arrested later on the afternoon of February 23, 2009, at a local motel. Buccal and penile swabs were collected from him. After testing, the penile swab presumptively indicated the presence of saliva, breast milk, or fecal matter. Later, a DNA analysis was done on the penile swab, which showed only DNA from Woods.

After a jury trial, Woods was convicted on two counts. He received sentences of twenty-five years for forcible sodomy and five years for assault in the second degree to be served consecutively.

In his first point, Woods contends that the circuit court erred in excluding evidence, as a discovery sanction, from an investigator hired by Woods. Woods argues that the exclusion of the investigator as a witness, as well as not allowing Woods to use the investigator's testimony to impeach G.C., violates his rights to constitutional due process, confrontation, and fair trial. The State argues that Woods failed to make an offer of proof, and, therefore, the issue was not adequately preserved for appeal.

The circuit court has discretion under Rule 25.18 to exclude witness's testimony when they have not been properly

disclosed. *State v. Cox*, 248 S.W.3d 720, 722 (Mo.App.2008). This discretion is very broad as it relates to the relevance of evidence. *State v. Bouser*, 17 S.W.3d 130, 140 (Mo.App.1999). The circuit court's imposition of a sanction can only be "disturbed on appeal ... when the sanction results in fundamental unfairness to the defendant." *Cox*, 248 S.W.3d at 722. For an appellate court to review the exclusion of evidence, the party whose evidence is excluded must generally make an offer of proof. *State v. Peters*, 186 S.W.3d 774, 781 (Mo.App.2006).

■ "When a prospective witness is precluded from testifying, the proper procedure is for the person protesting such exclusion to preserve the anticipated evidence by an offer of proof in the form of questions and answers, or a summation by counsel of the proposed testimony, which should also demonstrate why such testimony was admissible." *State v. Lopez*, 836 S.W.2d 28, 33 (Mo.App.1992). The offer of proof allows for the record to be preserved for appeal and "to allow the trial court to consider further the claim of admissibility." *State v. Yole*, 136 S.W.3d 175, 178 (Mo.App.2004). An offer of proof "enables the trial court to rule upon the propriety and admissibility of the evidence, and preserves a record for appellate review." *Karashin v. Haggard Hauling & Rigging, Inc.*, 653 S.W.2d 203, 205 (Mo. banc 1983). "An offer of proof must demonstrate three things: '(1) what the evidence will be; (2) the purpose and object of the evidence; and (3) each fact essential to establishing the admissibility of the evidence.'" *State v. Ross*, 292 S.W.3d 521, 526 (Mo.App. 2009) (quoting *State v. Hirt*, 16 S.W.3d 628, 633 (Mo.App.2000)). The offer of proof accomplishes two purposes:

(1) it "preserve[s] the record for appeal so the appellate court understands the scope and effect of the questions and proposed answers in considering whether the trial judge's ruling was proper," and (2) it allows "the trial judge to further consider the claim of admissibility" after having ruled the evidence inadmissible in pretrial hearings.

*Bouser*, 17 S.W.3d at 141 (quoting *Evans v. Wal–Mart Stores, Inc.*, 976 S.W.2d 582, 584 (Mo.App.1998)).

■ If there is no offer of proof, there is a narrow exception which allows the appellate court to review the exclusion of evidence by the circuit court. The three part test for this exception is: (1) "there must be a complete understanding based on the record of what the excluded testimony would have been"; (2) "the objection must be to a category of evidence rather than to specific testimony"; and (3) "the record must reveal that the evidence would have helped its proponent." *Peters*, 186 S.W.3d at 781 (quoting *Destin v. Sears, Roebuck & Co.*, 803 S.W.2d 113, 116 (Mo.App.1990)).

■ Woods never made an offer of proof. Prior to Woods's cross examination of G.C., Woods informed the circuit court that he planned to question G.C. regarding her conversation with an investigator hired by Woods. The State objected to this because, although the investigator had been identified as a witness for Woods, Woods had not turned over the investigator's notes or transcripts when they were requested during discovery. The circuit court ruled that the evidence would not be admitted. At this point, Woods made no offer of proof. Woods only implied that the investigator's testimony would impeach G.C.'s statements. This is not a sufficient offer of proof because it does not provide enough information to the circuit court to fully consider the admissibility of the evidence and does not adequately describe the evidence in order for an appellate court to make a decision on the exclusion of the evidence. Furthermore, this case

does not fall within the narrow exception to the requirement of an offer of proof. For these reasons, Woods has not adequately presented a proper offer of proof and has not preserved this issue for appellate review.

■■■■ Thus, our review of this point is limited to plain error review. Rule 30.20 authorizes this Court to review, in its discretion, "plain errors affecting substantial rights ... when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Our Supreme Court has established a threshold review to determine if a court should exercise its discretion to entertain a Rule 30.20 review of a claimed plain error. First, we determine whether or not the claimed error "facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted[.]'" *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc), *cert. denied*, 516 U.S. 1031, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995) (quoting Rule 30.20). If not, we should not exercise our discretion to conduct a Rule 30.20 plain error review. If, however, we conclude that we have passed this threshold, we may proceed to review the claim under a two-step process pursuant to Rule 30.20. In the first step, we decide whether plain error has, in fact, occurred. *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc), *cert. denied*, —— U.S. ——, 130 S.Ct. 144, 175 L.Ed.2d 93 (2009). "All prejudicial error, however, is not plain error, and plain errors are those which are evident, obvious, and clear." *Id.* (citations and internal quotation marks omitted). In the absence of evident, obvious, and clear error, we should not proceed further with our plain error review. If, however, we find plain error, we must continue to the second step to consider whether or not a miscarriage of justice or manifest injustice will occur if the error is left uncorrected. *Id.*

Woods's claim does not meet the initial threshold test. His claim does not facially establish substantial grounds for believing that he has been a victim of manifest injustice. Thus, we need not proceed with any Rule 30.20 plain error review. We, however, *ex gratia* explain below why the claimed error does not amount to plain error.

■■ The circuit court has broad discretion to decide whether or not to exclude evidence. *State v. Davis*, 186 S.W.3d 367, 373 (Mo.App.2005). The appellate court will not reverse the decision of the circuit court unless there has been a clear abuse of discretion or the decision was so prejudicial that it deprived Woods of a fair trial. *Id.* When the testimony is intended solely for impeachment purposes, the exclusion of the testimony is not fundamentally unfair if the appellant has the opportunity to thoroughly cross-examine the witness whose testimony was to be impeached. *State v. Stout*, 675 S.W.2d 931, 936 (Mo. App.1984).

Woods was given the opportunity to cross-examine G.C., and the record shows that she was impeached. Woods questioned G.C. about her previous convictions and highlighted discrepancies in G.C.'s various statements regarding the events on the night of the incident. Due to the fact that Woods never made an offer of proof, we cannot say that the testimony of the investigator would have provided evidence to impeach G.C. in any substantially different manner.

Woods has not shown that the sanction for his discovery violation was fundamentally unfair. Therefore, we conclude that the circuit court did not abuse its discretion by excluding the testimony of the investigator and deny Point I.

In his second point, Woods contends that the circuit court plainly erred by admitting evidence relating to the Rapid Stain Identification (RSID) test for saliva. Woods claims that, because the RSID evidence is only a presumptive test, it was improperly argued by the State to imply the presence of G.C.'s saliva on the penile swab taken from Woods. Woods asserts that the admission of this evidence resulted in a manifest injustice to him. The State argues that appellate review of this issue was waived by Woods due to the fact that Woods withdrew his objection to the RSID test evidence. The State also disputes Woods's claim that the presumptive test was improperly argued and misrepresented because the jury was fully informed that it was not a conclusive test for the presence of saliva.

There is a fundamental difference in appellate review of the admission of evidence in a case where no objection is made and where a party apparently consents to the admission. When one party makes the statement "no objection" to the admission of evidence, this is equivalent to affirmatively waiving appellate review. *State v. McWhorter*, 240 S.W.3d 761, 763 (Mo.App.2007). The announcement "no objection" also prevents plain error review of the introduced evidence. *State v. Collins*, 188 S.W.3d 69, 77 (Mo.App.2006). The pronouncement of "no objection" is different from simply failing to object, in that failing to object may allow for plain error review. *State v. Stevens*, 949 S.W.2d 257, 258 (Mo.App.1997). "Plain error review would apply when no objection is made due to 'inadvertence or negligence.'" *State v. Johnson*, 284 S.W.3d 561, 582 (Mo. banc), *cert. denied,* —— U.S. ——, 130 S.Ct. 749, 175 L.Ed.2d 525 (2009) (quoting *State v. Mead*, 105 S.W.3d 552, 556 (Mo.

App.2003)). "'[A] statement by defendant's counsel that there is no objection to ... a particular piece of evidence precludes a finding that the failure to object was negligent or inadvertent and renders that evidence admissible.'" *Stevens*, 949 S.W.2d at 258 (quoting *State v. Scott*, 858 S.W.2d 282, 285 (Mo.App.1993)).

In the present case, the circuit court preliminarily decided to exclude the evidence of the presumptive RSID test. However, the issue was revisited after jury selection, and Woods conceded the point to allow the RSID test into evidence, stating "at this point based on this case [1] we will concede the last two points, specifically the saliva and the semen [tests]." The pronouncement "we will concede" is equivalent to, if not stronger than, saying "no objection." Woods unequivocally agreed with the State that the evidence should be admissible. Therefore, Woods waived appellate review and is precluded from obtaining plain error review regarding the admission of the evidence.

Woods argues that the circuit court should have acted *sua sponte* to preclude the evidence. However, "[t]rial judges are not expected to assist counsel in trying cases, and should act *sua sponte* only in exceptional circumstances." *State v. Buckner*, 929 S.W.2d 795, 799–800 (Mo. App.1996). This situation was not an exceptional circumstance. Often, the trial judge is discouraged from interfering with the case as he may obstruct the party's trial strategy. *State v. Roper*, 136 S.W.3d 891, 902 (Mo.App.2004). As Woods withdrew his objection to the admission of the RSID test results, he waived appellate review. We, therefore, deny Point II.

1. Apparently referring to *State v. Taylor*, 298 S.W.3d 482, 499–500 (Mo. banc 2009), *cert. denied,* —— U.S. ——, 130 S.Ct. 3323, 176 L.Ed.2d 1226 (2010).

In his third point, Woods contends that the circuit court erred in entering its written sentence and judgment, which did not conform to the oral pronouncement of the sentence or the jury's verdict. The written sentence and judgment stated that Woods was found guilty of first-degree assault, rather than second-degree assault as the jury verdict and oral pronouncement reflected. Both parties agree that the written sentence and judgment is incorrect and does not match the jury verdict or the oral pronouncement. When there has been a clerical error or omission, the circuit court has the power to correct the inaccuracy with a *nunc pro tunc* order. *State ex rel. Poucher v. Vincent*, 258 S.W.3d 62, 65 (Mo. banc 2008). Therefore, a remand is necessary in this case for correction of the written judgment to reflect that Woods was convicted of assault in the second degree. Point III is granted.

We, therefore, affirm the circuit court's judgment convicting Woods of forcible sodomy and assault in the second degree but remand to the circuit court for the sole purpose of entering a *nunc pro tunc* judgment to correct the written judgment to reflect that Woods was convicted of assault in the second degree.

All concur.