STATE of Missouri, Respondent,

v.

**Brian James ADKISON, Appellant.**

**WD 79102**

Missouri Court of Appeals,
Western District.

OPINION FILED: April 25, 2017

Joshua D. Hawley, Attorney General, and Karen L. Kramer and Shaun J. Mackelprang, Assistant Attorneys General, Jefferson City, MO, Attorneys for Respondent.

Emmett D. Queener, Assistant Public Defender, Columbia, MO, Attorney for Appellant.

Before Division IV: Mark D. Pfeiffer, Chief Judge, and Lisa White Hardwick and Gary D. Witt, Judges

Mark D. Pfeiffer, Chief Judge

Mr. Brian J. Adkison ("Adkison") appeals his conviction for forcible rape in the Circuit Court of Boone County, Missouri ("trial court"). Adkison does not challenge the sufficiency of the evidence supporting his conviction. Instead, on appeal, Adkison first argues that the trial court coerced a verdict in violation of his right to due process of law through its erroneous use of a "hammer instruction." Second, Adkison

contends that the trial court violated his constitutional right to testify in his own defense at trial. We affirm.

### Factual and Procedural Background

On November 22, 2013, Adkison was charged by indictment with one count of first-degree burglary, § 569.160, one count of forcible rape, § 566.030, and one count of deviate sexual assault, § 566.070.[1] These charges were the result of Adkison's unwelcome sexual contact with L.C.,[2] his ex-girlfriend, in the early hours of May 4, 2013.

Adkison's case first went to trial on January 7, 2015. At the conclusion of the first trial, a jury acquitted Adkison of burglary but could not reach a unanimous verdict as to the rape and deviate sexual assault counts; the trial court therefore declared a mistrial as to those counts and set a new trial date.

Adkison's case again went to trial on July 17, 2015, regarding the forcible rape and deviate sexual assault counts only. After about five hours of jury deliberations, jurors told the court bailiff that they were unable to reach a verdict; the potential deadlock was later confirmed in a written statement from the jury. Adkison's attorney requested a second mistrial at this time, which was opposed by the State. The trial court denied Adkison's request for a mistrial and told the parties that it intend-

ed to give the jurors a "hammer instruction" pursuant to MAI–CR 312.10.[3] Adkison objected to the giving of a hammer instruction, which was overruled by the trial court.

After being read the instruction, the jury continued to deliberate for roughly three more hours without reaching a decision. Around 10:45 p.m., the trial court presented three options to the jury: (1) staying and concluding deliberations if the jury believed they were close to arriving at a verdict and they wanted to stay to conclude their deliberations; or, (2) taking a recess for the evening and coming back in the morning to resume deliberations if the jury believed that doing so would be helpful in reaching a verdict; or, (3) if the jury felt like they were hopelessly deadlocked, they were invited to advise the trial court of their inability to reach a verdict. The jury ultimately agreed to take a recess and return the next morning.

During their deliberations the next day, the jury expressed confusion as to whether their verdict needed to be unanimous on both charges. When presented with the jury's note communicating their confusion, Adkison's counsel requested that the jury not be given any further instructions. Adkison's counsel also argued against directing the jury's attention to a specific instruction which explained the unanimity requirements. After hearing argument and

1. All statutory references are to the Revised Statutes of Missouri 2000, Cum. Supp. 2012, unless otherwise indicated.

2. As required by law, we protect the identity of the rape victim by referencing her initials only.

3. MAI–CR 3d 312.10, also known as the "hammer instruction," states:
 You should make every reasonable effort to reach a verdict, as it is desirable that there be a verdict in every case. Each of you should respect the opinions of your fellow

jurors as you would have them respect yours, and in a spirit of tolerance and understanding endeavor to bring the deliberations of the whole jury to an agreement upon a verdict. Do not be afraid to change your opinion if the discussion persuades you that you should. But a juror should not agree to a verdict that violates the instructions of the Court, nor should a juror agree to a verdict of guilty unless he is convinced of the defendant's guilt beyond a reasonable doubt.

objections from both parties, the trial court advised the jurors to "[p]lease follow the instructions you have [already] been given." The jury returned a verdict at 11:05 a.m., finding Adkison guilty of forcible rape but acquitting him of deviate sexual assault. Adkison does not challenge the sufficiency of the evidence to support his conviction for forcible rape.

The trial court sentenced Adkison to fifteen years' imprisonment on his forcible rape conviction. This appeal follows.

## I. Adkison's Claim of Error Relating to the "Hammer Instruction"

In his first point on appeal, Adkison contends that the trial court erred in its decision to give a "hammer instruction" to the jury when the jury communicated that it was potentially deadlocked. Adkison argues that the instruction coerced a verdict in violation of his rights to due process of law, a fair trial, and an impartial jury. We disagree.

### Standard of Review

"The length of time that a jury is allowed to deliberate and the decision whether to give the hammer instruction are matters within the trial court's discretion." *State v. Hutson*, 487 S.W.3d 100, 112 (Mo. App. W.D. 2016). "An abuse of discretion occurs when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *State v. Canaday*, 476 S.W.3d 346, 349 (Mo. App. W.D. 2015) (internal quotation omitted). "To demonstrate an abuse of discretion, the appellant must show from the record that the jury's verdict was coerced." *Hutson*, 487 S.W.3d at 112 (internal quotation omitted). "The verdict is only considered coerced when under the totality of the circumstances it appears that the trial court was virtually

directing that a verdict be reached and by implication indicated that it would hold the jury until a verdict was reached." *Id.* (internal quotation omitted). "In the absence of any facts that any juror capitulated to a verdict in which [he or she] did not believe, there was no error." *State v. Evans*, 122 S.W.3d 731, 734 (Mo. App. S.D. 2003) (internal quotation omitted).

### Analysis

The giving of a hammer instruction alone is not coercive under Missouri law. *Hutson*, 487 S.W.3d at 112. "Knowing that the jury is deadlocked does not preclude the trial court from reading the hammer instruction and requiring the jury to continue deliberations." *Smith v. State*, 276 S.W.3d 314, 319 (Mo. App. E.D. 2008). To determine whether a hammer instruction was used in a coercive manner, we consider several factors, including:

(1) the amount of time the jury deliberates before the instruction is given; (2) the amount of time that elapses between the reading of the instruction and the verdict; (3) whether the trial court knows numerically how the jury is split and the position of the majority; and (4) whether the giving of the instruction conforms with the [Missouri Approved Jury Instructions] Notes on Use.

*Hutson*, 487 S.W.3d at 112.

Applying these factors, the record before us does not indicate that the trial court used the hammer instruction to coerce the jury's verdict.

First, the amount of deliberation time before the trial court gave the instruction—roughly five hours—was relatively long, indicating that a hammer instruction was necessary to encourage the jury's continued deliberation in the face of potential deadlock. When the jury indicated that it might be deadlocked, the trial court care-

fully considered its options and relevant objections from counsel before giving the instruction. Other Missouri cases have found that even shorter periods of pre-instruction deliberation did not indicate coercion. *See, e.g., State v. Scott,* 348 S.W.3d 788, 792, 798–99 (Mo. App. S.D. 2011) (deliberation for four hours and fifty minutes before instruction), *abrogated on other grounds by State v. Sisco,* 458 S.W.3d 304 (Mo. banc 2015); *State v. Carriker,* 342 S.W.3d 425, 427 (Mo. App. E.D. 2011) (deliberation for three hours before instruction); *State v. Dodd,* 10 S.W.3d 546, 553 (Mo. App. W.D. 1999) (deliberation for two hours and forty-seven minutes before instruction); *State v. Jackson,* 896 S.W.2d 77, 80 (Mo. App. W.D. 1995) (deliberation for two hours and thirty minutes before instruction); *State v. Kinder,* 858 S.W.2d 838, 839 (Mo. App. S.D. 1993) (deliberation for two hours and nineteen minutes before instruction). The amount of deliberation time before the hammer instruction was given in this case does not indicate that the jury's verdict was coerced.

Second, the amount of time between giving the instruction and the jury's eventual verdict—roughly three more hours that day plus another two hours the next day— was relatively long, indicating that the jury did not feel coerced or pressured to reach a verdict immediately as a result of receiving the instruction. *See State v. Copple,* 51 S.W.3d 11, 15 (Mo. App. W.D. 2001) ("[I]f the jury further deliberated a considerable amount of time [after receiving the instruction but] before returning a unanimous verdict, that may indicate that the jury followed the instruction and considered and deliberated upon each other's viewpoints."). Other Missouri cases have found that similar or even shorter periods of post-instruction deliberation did not indicate coercion. *See, e.g., State v. Stallings,* 812 S.W.2d 772, 777 (Mo. App. E.D. 1991) (deliberation for three hours after hammer instruction); *State v. Johnson,* 948 S.W.2d 161, 165 (Mo. App. E.D. 1997) (deliberation for two hours and twenty minutes after hammer instruction); *State v. Williams,* 409 S.W.3d 460, 467 (Mo. App. W.D. 2013) (deliberation for one hour and twenty-three minutes after instruction). The amount of deliberation time after the hammer instruction was given in this case does not indicate that the jury's verdict was coerced.

Third, although the trial court was informed that the jury was having trouble arriving at a unanimous verdict, there is no evidence in the record that the trial court at any time knew how the jury was split or what the majority position was during their deliberations.

In addition, the record shows that the trial court followed the prescribed language and Notes on Use for MAI–CR3d 312.10 when it gave the hammer instruction to the jury. Adkison does not claim that the given instruction was non-conforming with MAI–CR3d 312.10, nor does a comparison of that MAI and the given instruction reveal any variation between the two. The trial court allowed Adkison's counsel to make an objection on the record to giving the instruction; it numbered, read, and submitted the instruction to the jury; and the trial court noted on the record the time that the jury first retired to deliberate, the time it gave the hammer instruction, and the time the jury returned a verdict.

Finally, Adkison's claim of coercion is defeated by the trial court's actions before dismissing the jury for the night on July 17, 2015. At that time, the trial court asked the jury to inform the court whether it wished to continue deliberating, whether it wished to recess for the night and resume in the morning, or whether it believed it was hopelessly deadlocked. The jury re-

sponded by accepting the second option—to recess for the night and resume deliberations in the morning. The fact that the jury did not indicate a hopeless deadlock when explicitly asked by the trial court is a strong indicator that the trial court's delivery of the hammer instruction did not have a coercive effect on the jury's deliberations.

The circumstances of this case simply do not indicate that the trial court used the hammer instruction to unlawfully coerce a verdict. By any reasonable view, the record before us does not demonstrate that the trial court used the hammer instruction to "virtually direct" the jury to reach a verdict, nor does it demonstrate that the trial court intended to hold the jury until a verdict was reached. The hammer instruction clearly stated that a juror should only agree to a guilty verdict if he or she was convinced of Adkison's guilt beyond a reasonable doubt. Accordingly, the use of the instruction did not coerce the jury's verdict, and the trial court did not abuse its discretion in giving it.

Point I is denied.

## II. Adkison's Belated Claim That He Was Denied Right to Testify in His Own Defense

In his second point on appeal, Adkison contends that the trial court erred in failing to ascertain on the record whether or not he wanted to exercise his constitutional right to testify at trial, which thereby *coerced* him into waiving that right. We disagree.

### Standard of Review

■■■ "To properly preserve an issue for an appeal, a timely objection must be made during trial." *State v. Driskill*, 459 S.W.3d 412, 425 (Mo. banc 2015) (internal quotations omitted). "The objection at trial must be specific and made contemporane-

ously with the purported error. To preserve a constitutional claim of error, the claim must be raised at the first opportunity with citation to specific constitutional sections." *Id.* at 426 (internal citation omitted). "[R]aising an issue for the first time in a motion for new trial, when an objection could have been made at trial, is insufficient to preserve the claimed error for appellate review." *State v. Barker*, 410 S.W.3d 225, 234 (Mo. App. W.D. 2013) (internal quotation omitted).

■■■ Adkison did not make an objection regarding a denial of his constitutional right to testify at any time during trial; more specifically, he never voiced a concern about his right to testify when his trial counsel announced that the defense would rest its case without the presentation of evidence. Because Adkison did not make an objection during trial regarding his right to testify, we review this claim for plain error only. *See* Rule 30.20. "Plain error is found when the alleged error facially establish[es] substantial grounds for believing a manifest injustice or miscarriage of justice occurred." *Driskill*, 459 S.W.3d at 426 (internal quotations omitted).

### Analysis

■■■ Criminal defendants have a constitutional right to testify on their own behalf at trial, and only the defendant may waive that right. *See Rock v. Arkansas*, 483 U.S. 44, 51, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987); *State v. Davis*, 318 S.W.3d 618, 637 (Mo. banc 2010). Waiver of the right to testify must be made knowingly and voluntarily. *See Allen v. State*, 50 S.W.3d 323, 327 (Mo. App. W.D. 2001). Although it is preferable for the trial court to solicit a defendant's waiver of the right to testify on the record, "[a] trial court has no duty to inquire from a criminal defendant who remains silent throughout the proceedings

regarding whether he or she will testify." *State v. Edwards*, 173 S.W.3d 384, 386 (Mo. App. E.D. 2005).[4]

■ That said, the trial court here did take steps to ensure that Adkison understood his right to testify. For example, the following on-the-record colloquy occurred between the trial court and Adkison immediately prior to *voir dire*:

Q. Do you understand that [the State's] burden is to prove you guilty beyond a reasonable doubt?

A. Yes, I do.

Q. Do you understand that you do not have to present any evidence at all if you don't want to?

A. Yes, I do.

Q. Do you understand that, as the defendant, you do have the right to testify if you want to?

A. Yes, I do.

Q. Do you also understand that you have the right not to testify?

A. I understand.

Q. Do you understand that if you do testify, you would be subject to cross-examination by the State's attorney?

A. I understand.

Q. Do you understand that he might ask you anything about your prior testimony and also about your prior convictions, if you have any?

A. I understand.

Q. Do you understand that anything that you would say under oath on the stand could be used against you?

A. Yes, I do.

Q. Do you understand if you choose not to testify and your attorney requests it that I will give an instruction to the jury making sure that they can draw no inference from the fact that you have decided not to testify?

A. I understand.

The record plainly contains evidence that Adkison understood his right to testify in his own defense, as well as his right *not* to testify. In fact, Adkison never claims that he failed to understand his right to testify throughout the course of his trial; instead, his first and only complaint on this matter came after a guilty verdict was returned. Only then did Adkison coincidentally recall that he had demanded in writing to his *trial counsel* that he wanted to testify.[5] In other words, by Adkison's own argument, he did, in fact, assert his right to testify, and it was his trial counsel who allegedly thwarted his

**4.** Unquestionably, "the best practice for a trial court is to question the defendant personally, on the record, to ensure that the defendant understands the right, understands what is lost in the waiver, has discussed the issue with defense counsel, and voluntarily intends to waive the right." *State v. Driskill*, 459 S.W.3d 412, 426 (Mo. banc 2015) (internal quotation omitted). "We have previously recommended that the trial court and the attorneys create a record outside the hearing of the jury, while defendant is under oath, indicating the defendant's waiver of his right to testify." *Allen v. State*, 50 S.W.3d 323, 327 (Mo. App. W.D. 2001) (internal footnote omitted). "This is accomplished simply by asking the defendant at the close of the State's evidence if he would like to testify, and, if not,

then the court should advise him that he is waiving his right to testify." *Id.*

**5.** After the trial court imposed sentence, it inquired of Adkison if he had any complaints of his trial counsel, to which Adkison responded: "I made a written statement that said I wanted to testify, and [trial counsel] obviously didn't give that to you, or I don't know what happened to that. But I wrote on a sheet of paper that said I wished to testify in this case, and I was not allowed to testify." Of note, Adkison never complains that he communicated his demand to testify to the trial *court* at any time prior to the jury's verdict; rather, he complains that he communicated his demand to testify to his trial *counsel.*

efforts. While this argument may support an evidentiary hearing on a post-conviction relief motion pursuant to Rule 29.15, it cannot form the basis for plain error by the trial court.

The record before us simply does not show that the trial court coerced or compelled Adkison's waiver in some way, and Adkison presents no authority to support his contention that the trial court was required to affirmatively solicit his waiver on the record. Adkison understood that he had the right to testify or to remain silent, that anything he said while testifying could be used against him, and that there would be no inference drawn from his silence if he did not testify. Aside from Adkison's self-serving comments made after the verdict was returned, the record shows no indication that either the trial court or his attorney compelled Adkison to waive his right to testify at trial. In other words, "[Adkison] had full knowledge of all of the facts and circumstances surrounding his right to testify; there was no additional fact or scenario that would occur should he choose to waive his right to testify." *State v. Driskill*, 459 S.W.3d 412, 429 (Mo. banc 2015).

Simply put, "[p]rudential considerations notwithstanding, a trial court has no duty to inquire from a criminal defendant who remains silent throughout the proceedings regarding whether he or she will testify." *State v. Robertson*, 396 S.W.3d 475, 476 (Mo. App. S.D. 2013) (internal quotation omitted). We are not persuaded that, where a trial court has no duty to inquire from a criminal defendant who remains silent throughout the proceedings regarding whether he wishes to testify, we can convict that same trial court of plain error on that basis alone.

Point II is denied.

## Conclusion

For the reasons outlined above, we affirm Adkison's conviction for forcible rape.

Lisa White Hardwick and Gary D. Witt, Judges, concur.