

# In the Missouri Court of Appeals
# Eastern District

DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED110923 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Francois County |
| | ) | Cause No. 19SF-CR00431-01 |
| v. | ) | |
| | ) | |
| EUGENE P. CAMPBELL, | ) | Honorable Wendy L. Wexler Horn |
| | ) | |
| Defendant/Appellant. | ) | Filed: September 12, 2023 |

**Introduction**

Defendant Eugene P. Campbell appeals from the judgment upon his convictions following a jury trial for three counts of first-degree child molestation, in violation of Section 566.067.[1] In Point I, Defendant argues the trial court abused its discretion in excluding testimony by Victim's grandmother regarding a possible motive for Victim to fabricate the allegations against Defendant. In Points II, III, and IV, Defendant argues the court erred in failing to ensure that the jury instructions required a unanimous verdict on each count of conviction. We affirm the judgment of the trial court.

---

[1] Unless otherwise indicated, all statutory references are to RSMo (2000) as amended.

**Factual and Procedural Background**

In 2011, Victim was a minor child less than 12 years old. At the time, Victim, Defendant, who was Victim's step-grandfather, Victim's grandmother ("Grandmother"), Victim's father ("Father"), and Victim's brother were all living together.[2]

On March 8, 2019, when Victim was 15 years old, Victim disclosed to Father repeated acts of sexual abuse by Defendant in 2011. Father informed Mother, who was living in another state, and asked Mother to go with Victim to file a police report.

On March 13, 2019, Mother escorted Victim to the St. Francois County Sheriff's Department, where Victim dictated a report. A few days later, Victim was interviewed at the Children's Advocacy Center, where she disclosed "everything that happened." Victim was able to recall three incidents of sexual abuse, all of which occurred inside the residence. She remembered additional details of only the first incident because it was "kind of like burned into [her] brain."

On March 22, 2019, a detective with the sheriff's department investigated Victim's allegations and interviewed Defendant.[3] After first denying the allegations, Defendant eventually admitted he molested Victim three times to "see if he could get by with it." Defendant denied that Victim was lying and agreed that she was being truthful. Defendant then wrote a letter of apology to Victim.

Defendant was charged with three counts of child molestation in the first degree. The trial court held a jury trial on April 13-14, 2022. Victim and the investigating detective testified for

---

[2] The personal identifying information of Victim and witnesses has been omitted pursuant to RSMo § 509.520 (Supp. 2023).

[3] A redacted version of Defendant's recorded interview was played to the jury.

the State. Grandmother and a criminal investigator with the Missouri State Public Defender's Office testified for the defense.

<u>Grandmother's Testimony</u>

Grandmother testified on direct examination that Mother had asked her to go to California to babysit. When defense counsel asked Grandmother to explain, the prosecutor objected to relevance. At a sidebar conference outside the hearing of the jury, defense counsel alleged the testimony would show "a possibility of motive for [Victim] to lie." Defense counsel added:

> I believe testimony is going to come out that [Mother] wanted [Grandmother] to come to California for a month or more, that when [Grandfather] and [Grandmother] were asking about how she would get home, how she would get her medicines, how she would get to doctor's appointments, they end up saying, no, that she couldn't go out there to babysit, and I believe that made [Mother] mad and that that could have influenced her, then, to have [Victim] say these things. I think it goes to her motive to make these allegations up.

Defense counsel also suggested that Grandmother's testimony would show that Victim "could have had to, then, go and watch her younger siblings and that could have made [Victim] mad."

The prosecutor countered that no evidence had been elicited, either on direct or cross-examination, that Mother had a motive to coach Victim to accuse Defendant or that Victim herself had a motive to lie.

The trial court then asked defense counsel to explain what evidence Grandmother would present. Defense counsel answered, "Evidence that this happened, that she knew that she wanted her to come out and babysit all of her kids and that she told her no, and then all of a sudden, a few weeks later, these allegations then came about." The trial court sustained the State's objection. Defense counsel added, "I just want my record made," and the trial court responded, "Sure. Absolutely."

3

## Jury Instructions

At the instruction conference, the State offered Instructions 5, 9, and 13, the verdict directors on Counts One, Two, and Three. Instruction 9 required the jury to find that the incident charged in Count Two occurred "on a date and/or time different from [the] incident in Count One and Three." Likewise, Instruction 13 required the jury to find that the incident charged in Count Three occurred "on a date and/or time different from the incidents in Count One and Two." Instruction 18 also advised the jury, "The defendant is charged with a separate offense in each of the three counts submitted to you. Each count must be considered separately." Finally, Instruction 19 required the verdict "must be agreed to by each juror" and "must be unanimous."

Defense counsel objected to the verdict directors as contrary to the Supreme Court of Missouri's decision in *State v. Celis-Garcia*, 344 S.W.3d 150 (Mo. banc 2011), requiring jury unanimity in criminal cases. Counsel argued the verdict directors' distinction of only the dates and times of the incidents was insufficient to require a unanimous jury verdict on each count. The prosecutor responded that the verdict directors differentiated the incidents, and "the jury would have to believe that there were three different incidents that occurred on either three different dates or three different times in order for [Defendant] to be guilty of all three." The trial court overruled the objection because the evidence was sufficient that there were three incidents and the verdict directors addressed the *Celis-Garcia* issue. The trial court submitted the verdict directors to the jury.

In closing argument, the prosecutor explained that the verdict directors differed in that they required the jury "to find there [were] three different incidents." The prosecutor repeated, "So you have to decide and find that there are three separate incidents."

The jury found Defendant guilty on all three counts. Defendant filed a motion for new trial alleging, among other things, that the trial court erred in sustaining the State's relevance objection to Grandmother's testimony and overruling defense counsel's *Celis-Garcia* objection to the verdict directors. The trial court denied the motion.

On August 19, 2022, following a sentencing hearing, the trial court sentenced Defendant as a prior offender to three consecutive terms of 20 years, for a total of 60 years, in prison. This appeal follows.

**Discussion**

Grandmother's Testimony

In Point I, Defendant argues the trial court abused its discretion in excluding Grandmother's anticipated testimony to Victim's motive to fabricate the allegations against Defendant. He is incorrect.

As a preliminary matter, we address the State's contention that Defendant's claim of error was not preserved in the trial court and that Defendant thus is entitled to only plain-error review. Our rules for preservation of error are applied to enable both the trial court and the appellate court "to define the precise claim made by the defendant," not "to enable the court to avoid the task of review, nor to make preservation of error difficult for the appellant." *State v. Amick,* 462 S.W.3d 413, 415 (Mo. banc 2015) (quoting *State v. Pointer*, 887 S.W.2d 652, 654 (Mo. App. W.D. 1994)).

To preserve a claim of error regarding the exclusion of evidence at trial, the proponent of the evidence must make an offer of proof establishing what the evidence would have been, its purpose and object, and each fact essential to establishing its admissibility. *State v. Brand*, 544 S.W.3d 284, 289 (Mo. App. E.D. 2018). An offer of proof is "preferably" made in question-and-answer format, although "a specific narrative offer of proof summarizing the proposed testimony

5

is acceptable in some situations." *State v. Childs*, 257 S.W.3d 655, 658 (Mo. App. W.D. 2008). Regardless of form, the offer of proof must be specific and sufficiently detailed; "mere conclusions of counsel will not suffice." *Brand*, 544 S.W.3d at 289 (quoting *State v. Townsend*, 737 S.W.2d 191, 192 (Mo. banc 1987)).

Here, defense counsel's narrative offer of proof provided the trial court and opposing counsel with the substance of the excluded testimony in enough detail for this Court to determine whether the exclusion of the evidence was erroneous and whether Defendant was prejudiced thereby. *See State v. Joiner*, 823 S.W.2d 50, 51-52 (Mo. App. E.D. 1991). The narrative offer of proof was sufficient to preserve the alleged error for appellate review.

We review the trial court's decision regarding the admissibility of evidence for an abuse of discretion. *State v. Taylor*, 466 S.W.3d 521, 528 (Mo. banc 2015). "The court abuses its discretion only if its decision is 'clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration.'" *Id.* (quoting *Mitchell v. Kardesch*, 313 S.W.3d 667, 675 (Mo. banc 2010)).

"Evidence must be logically and legally relevant to be admissible." *State v. Prince*, 534 S.W.3d 813, 817 (Mo. banc 2017). "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable." *Id*. "Evidence is legally relevant when the probative value of the evidence outweighs unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." *State v. Taylor*, 466 S.W.3d 521, 528 (Mo. banc 2015).

Though we have recognized that a defendant in a sexual assault case may introduce evidence of a prosecution witness's motivation to lie, "the scope of the evidence used to show bias is within the broad discretion of the trial court." *State v. Perkins*, 656 S.W.3d 285, 294 (Mo.

6

App. E.D. 2022) (quoting *State v. Taylor*, 588 S.W.3d 632, 637 (Mo. App. W.D. 2019)). "The range of external circumstances from which probable bias may be inferred is infinite," but "these circumstances should have some clearly apparent force … or, should not be too remote." *Perkins*, 656 S.W.3d at 297 (quotations omitted).

In this case, the proffered testimony that Mother asked Grandmother to go to California and Grandmother declined is not logically relevant to any motivation by Victim to fabricate the allegations against Defendant. Defendant can muster only that Grandmother's refusal to go to California may have angered Mother, which could have caused Mother to influence Victim to fabricate child molestation allegations against Defendant. Alternatively, Defendant supposes that Victim may have been asked to babysit in Grandmother's place, which could have angered Victim and caused her to fabricate the allegations. We are unpersuaded by Defendant's speculation of some remote connection between Grandmother's decision not to go to California and Victim's child molestation allegations against Defendant.

Similarly, that Grandmother refused Mother's request to go to California is not legally relevant, as any "minimal probative value" it might offer is outweighed by the risk of confusing or misleading the jury. *See Id*.

Grandmother's proffered testimony was not logically or legally relevant to Victim's motive for making child molestation allegations against Defendant. The trial court did not abuse its discretion in excluding the testimony. Point I is denied.

<u>Jury Instructions</u>

In Points II, III, and IV, Defendant argues the trial court erred in failing to ensure that the jury instructions required the jury to return a unanimous verdict on all three counts of first-

degree child molestation. Because our analysis is the same for all three points, we address them together.

Our review of claims of instructional error is *de novo*. *State v. Torres*, 658 S.W.3d 270, 274 (Mo. App. W.D. 2023). We will reverse the trial court's decision "only if the instructional error misled the jury and, thereby, prejudiced the defendant." *State v. Zetina-Torres*, 482 S.W.3d 801, 810 (Mo. banc 2016).

Under the Missouri Constitution, a jury verdict in a criminal case must be unanimous. *Celis-Garcia*, 344 S.W.3d at 155; *see also* Mo. Const. art. I, § 22(a). "For a jury verdict to be unanimous[,]… the jurors must be in substantial agreement as to the specific act or instance of criminal conduct supporting the conviction." *State v. Gilbert*, 531 S.W.3d 94, 101 (Mo. App. W.D. 2017) (citing *Celis-Garcia*, 344 S.W.3d at 155).

Unanimity issues often arise in "multiple acts" cases, in which "there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count." *Celis-Garcia*, 344 S.W.3d at 155-56. "In 'multiple acts' cases, the threat to unanimity exists when the verdict director lists the elements of the offense, and those elements could be satisfied by differing and distinct acts of the defendant introduced into evidence." *State v. Rycraw*, 507 S.W.3d 47, 60 (Mo. App. E.D. 2016).

This is not a "multiple acts" case, and Defendant's reliance on *Celis-Garcia* is misplaced. Here, while Victim testified to, and Defendant essentially admitted, three separate incidents of child molestation, the three incidents were not charged in a single count. Critically, each incident was charged in a separate count, unlike in *Celis-Garcia*. Separate verdict directors differentiated the counts and required the jury to find that each charged incident occurred "on a date and/or time different from" the other incidents. The jury instructions also admonished the jury that each

8

count must be considered separately, and that the verdict must be "agreed to by each juror" and "must be unanimous." For good measure, the prosecutor repeatedly cautioned the jury that the verdict directors required them to find three separate incidents to convict on all three counts. The jury instructions, including the verdict directors, differentiated the three separate counts and required juror unanimity on each count. *See Rycraw*, 507 S.W.3d at 61.

In *Rycraw*, this Court similarly found no *Celis-Garcia* unanimity problem. There, the record presented evidence of two different acts of first-degree statutory sodomy, the two acts were charged in two separate counts, and the verdict director for the second count required the jury to differentiate between the two counts by finding that the defendant engaged in the charged conduct "a second time." *Rycraw*, 507 S.W.3d at 61. There, as here, the prosecutor stressed the distinction between the two charged acts in closing argument. *Id*. Accordingly, the *Rycraw* Court concluded that the verdict directors described the two separate acts "with sufficient clarity so as [to] require juror unanimity to render a conviction on both counts." *Id.*; *see also Celis-Garcia*, 344 S.W.3d at 157 (stating a defendant's right to a unanimous verdict would be protected by the state "electing the particular criminal act on which it will rely to support the charge").

The trial court did not err in overruling Defendant's objections to the verdict directors. The jury instructions adequately ensured a unanimous jury verdict as to each count. Points II, III, and IV are denied.

## Conclusion

The judgment is affirmed.

Cristian M. Stevens, J.

9

Robert M. Clayton III, P. J., and
Philip M. Hess, J., concur.